IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| BERNARD MCFADDEN, # 199135, ) | Civil Action No. 3:06-1560-RBH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MRS. FNU JOE, HEAD NURSE OF THE ) | |
| EASTERN HEALTHCARE GROUP; ) | |
| MR. SIMON MAJOR, DIRECTOR OF ) | |
| SUMTER-LEE REGIONAL DETENTION ) | |
| CENTER; AND ) | |
| THE EASTERN HEALTHCARE GROUP, ) | |
| MEDICAL PROVIDER FOR SLRDC, IN THEIR ) | |
| OFFICIAL, INDIVIDUAL OR PERSONAL ) | |
| CAPACITIES, ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | |
| _____) | |

This action was filed by the pro se Plaintiff on May 22, 2006.[1] At the time of the alleged incidents, Plaintiff was a pretrial detainee at the Sumter-Lee Regional Detention Center ("SLRDC"). He is currently incarcerated at the Wateree Correctional Institution of the South Carolina Department of Corrections ("SCDC"). Defendant Simon Major ("Major"), the Director of the SLRDC, filed an answer on September 6, 2006. The remaining Defendants, Nurse Joe ("Joe") and Eastern Healthcare Group ("Eastern Healthcare") have not filed answers. Because Plaintiff is proceeding pro se, he was advised on November 17, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant Major's motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a memorandum in opposition to summary judgment on January 4, 2007.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

Major filed a reply on January 15, 2007. On July 16, 2007, Plaintiff filed a pleading titled "Reiteration or Clarification of the Causes of Action Against Defendant Major Identified in Plaintiff's Opposition to Summary Judgment."

DISCUSSION

Plaintiff fractured his left wrist in a motor vehicle accident in November 2002. He was detained at the SLRDC from April 7, 2003 until his release to SCDC on September 2, 2003. See Joe Aff. (Attachment to Major's Motion for Summary Judgment). On July 10 or 16, 2007, Plaintiff claims he had an altercation with another inmate in which he slapped the other inmate, allegedly causing a fracture to the ulna in Plaintiff's his left arm.[2] Plaintiff appears to allege that Defendants were deliberately indifferent to his medical needs after the July 10 or 16, 2007 incident. Defendant Major contends that he is entitled to summary judgment because: (1) Plaintiff's claims are barred by res judicata; (2) Plaintiff fails to state a cause of action under the Fourteenth Amendment because Major was not deliberately indifferent to any of Plaintiff's serious medical needs; (3) Major is entitled to qualified immunity; (4) any state law claims are barred by res judicata; (5) Major is entitled to employee immunity under the South Carolina Tort Claims Act ("SCTCA") as to any state law tort claims; (6) Plaintiff's state law claims are barred by the two-year statute of limitations under the SCTCA; and (7) Major is entitled to sovereign immunity under the SCTCA for any acts of simple negligence as Plaintiff's allegations of negligence do not rise to the level of gross negligence.

    1.    <u>Res Judicata</u>

---

[2] In his Complaint, Plaintiff alleges that this incident occurred on July 16, 2003. In his opposition memorandum, he claims it occurred on July 10, 2003, but has provided no explanation for the discrepancy in dates.

2

Major contends that this action is barred by the doctrine of res judicata because Plaintiff previously litigated claims concerning deliberate indifference to an injury to his arm. On June 27, 2003, Plaintiff filed an action against Nurse Joe, SLRDC, and Major (Civil Action Number 3:03-1986-24BC)[3] in which he alleged, among other things, that Joe and Major were deliberately indifferent to his medical problems. On February 4, 2004, the undersigned recommended that the complaint be dismissed for Plaintiff's failure to prosecute. Plaintiff did not object and the Honorable Margaret B. Seymour, United States District Judge, dismissed the action.

Res judicata bars relitigation in a second suit involving the same parties or their privies based on the same cause of action if the court in the first suit issued a judgment on the merits. See Parkland Hosiery Co., Inc. v. Shore, 439 U.S. 322 (1979). Res judicata, sometimes referred to as claim preclusion, provides that "if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." In re Varat Enterprises, Inc., 81 F.3d 1310, 1315 (4th Cir. 1996). The three elements required to be shown for res judicata to apply are "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit on the same cause of action." Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1473 (4th Cir. 1996). "Generally, claims are part of the same cause of action when they arise out of the same transaction or series of transactions." In re Varat Enterprises, Inc., 81 F.3d at 1316.

In his opposition memorandum, Plaintiff argues that res judicata does not bar this action because the prior action concerned events which occurred from April 6 to May 21, 2003, while this

---

[3]On July 28, 2004, Plaintiff filed another action (3:04-02421-RBH-JRM) concerning, among other things, deliberate indifference to his wrist/arm. Defendants in that action, however, are employees of SCDC and not the defendants named here.

action concerns a separate incident (a fracture of his ulna) which occurred on July 10, 2003. He claims that this cause of action is different, the evidence needed is different, he did not know about the July 10, 2003 incident at the time (June 29, 2003) he filed his complaint in the prior action, and he had not exhausted his administrative remedies as to the July 10, 2003 incident at the time he filed the prior action. In his reply, Defendant Major argues that Plaintiff has not presented any competent medical evidence of a new injury or a fracture to his left ulna occurring in July 2003, such that his claim of a "new transaction" fails.

This action, as to Defendant Major, is barred by the doctrine of res judicata. Plaintiff brought the same cause of action against Major in Civil Action Number 3:03-1986-24BC, Major was a defendant in the prior action, and the prior action was dismissed with prejudice for Plaintiff's failure to prosecute. In the prior action, Plaintiff litigated his claims concerning the medical care he received at SLRDC. Major, Joe and SLRDC presented Plaintiff's medical records from the time of his detention until August 22, 2003. Although the alleged fracture of his ulna occurred after he filed the prior action, there is no reason why Plaintiff could not have litigated that claim during the prior action. Further, review of the medical records in this action and Plaintiff's prior actions fails to reveal any evidence of a new fracture or a fracture of his left ulna occurring in July 2003, as discussed in further detail below. Alternatively, Major should be granted summary judgment for the reasons discussed below.

    2.    <u>Medical Claims</u>

Defendant Major contends that Plaintiff fails to state a cause of action pursuant to the Fourteenth Amendment because he was not deliberately indifferent to any of Plaintiff's serious medical needs. Specifically, Major contends he should be entitled to rely on the expertise of the

SLRDC health care providers; that Plaintiff received immediate medical care after the alleged July 16, 2003 incident; and that any delay in obtaining an appointment for Plaintiff at an orthopaedic clinic did not rise to the level of deliberate indifference to a serious medical need.  In his reply, Major contends that Plaintiff fails to show that any new fracture occurred on July 16, 2003 (as he originally pled), or on July 10, 2003 (as he now claims).

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).[4]  The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

---

[4]Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment.  See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983).  However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need).  See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for

>commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. Medical records[5] indicate that Plaintiff sustained injuries to his wrists prior to his April 7, 2003 detention at SLRDC. X-rays of Plaintiff's right wrist on March 3, 2003, indicate that Plaintiff suffered fractures of his distal right radius and ulnar styloid which appeared subacute. An MRI of Plaintiff's left wrist was performed on March 26, 2003. The impression was:

>[a]bnormal appearance to the scaphoid bone with a fracture line through the waist of the scaphoid. Increased signal intensity through the scaphoid, both distal and proximal pole, on T2 weighted images with a more decreased signal intensity appearance on T1 weighted image in the proximal pole worrisome for avasular necrosis.

On March 30, 2003, x-rays of both of Plaintiff's wrists were taken with the impression:

>[s]uspect healing fracture in the left scaphoid bone and in the right distal radius and at the ulnar styloid base. Developing changes of avascular necrosis in the proximal pole of the left scaphoid bone could not be excluded. Apparent old healed fractures of the left first metacarpal.

Plaintiff was treated at SLRDC by medical personnel at Eastern Healthcare on April 9, 21, 23, and 25, 2003. Ibuprofen was prescribed. Eastern Healthcare attempted to have Plaintiff seen by Palmetto Orthopaedic and Sports Medicine ("Palmetto"), but Palmetto would not treat Plaintiff

---

[5]A copy of Plaintiff's medical records is attached to Major's motion for summary judgment and reply.

if he did not have insurance. Plaintiff's attorney was notified. Plaintiff was also treated by Eastern Healthcare on May 21, June 18, and June 25, 2003.

Plaintiff was examined by a nurse at Eastern Healthcare on July 10, 2003. Medical notes indicate that Plaintiff reported he had tripped and hurt his left arm. No broken skin, bruises, or displacement were noted. A correctional officer ("C/O") noted that Plaintiff was using his left hand without problems or complaints after the alleged accident. The nurse consulted with Dr. Floyd of Eastern Healthcare who prescribed Motrin for Plaintiff. Later that day, the medical staff noted that Plaintiff was moving his left arm without difficulty. On July 11, 2003, Plaintiff was noted to have no complaints of pain, no swelling, and no displacement. He was observed by C/Os using his left arm, wrist, and hand without complaints. On July 12, 2003, Plaintiff extended his left hand for medicine and voiced no complaints. A C/O reported that Plaintiff used both his hands when out for recreation. That afternoon, Plaintiff complained of swelling and had some edema in his left wrist that was not present in the morning. His arm circulation, however, was noted to be adequate to the fingers on his left hand. Plaintiff was taken to Tuomey Hospital in Sumter, South Carolina for physical therapy on July 15, 2003. On July 16, 2003, it was noted that Plaintiff had a swelling of his left hand at his left wrist, but circulation to the fingers of his left hand was good. It was later reported that he had no complaints of pain. Plaintiff was transported again to physical therapy on July 17, 2003. He was scheduled for physical therapy on July 22, 2003, but missed his session due to a court appearance. Dr. Floyd checked Plaintiff's chart again on August 6, 2003, at which time he asked that an appointment be made with an outside orthopaedic surgeon to see if anything else was needed for Plaintiff. On August 6, 2003, an appointment was made for Plaintiff at Palmetto for August 22, 2003.

The diagnosis from the Department of Rehabilitation Services at Tuomey Rehabilitation on July 16, 2003, was left scaphoid fracture. There is no mention of any ulnar fracture. A July 23, 2003 letter from Plaintiff's attorney (attachment to Plaintiff's Opposition Memorandum) discusses Plaintiff's injuries from the motor vehicle accident, but does not refer to any later injury.

Plaintiff was examined by Dr. Kurt T. Stroebel, an orthopaedic surgeon, on August 22, 2003. Dr. Stroebel noted that x-rays showed a "malunion left distal radius fracture, nondisplaced scaphoid fracture" and an MRI showed a "nondisplaced scaphoid fracture, possible AVN [avascular necrosis]." In the history section of the record, it was noted that Plaintiff had a ten month history of left wrist pain and that he had been involved in a motor vehicle accident in which he fractured his left wrist. Dr. Stroebel's impression was malunion of Plaintiff's left distal radius and nondisplaced left scaphoid fracture. There was no indication in Dr. Stroebel's records of any fracture of Plaintiff's left ulna. Dr. Stroebel prescribed Motrin (the same medicine prescribed previously by medical personnel at Eastern Healthcare). The plan was to place Plaintiff in a thumb spica splint to protect the scaphoid fracture and that "[o]nce his disposition is salt [sic], he will need surgery for possible osteotomy of the distal radius and repair of scaphoid fracture. At this point, we will see him back as needed."

Plaintiff appears to contend that he has shown a new injury because another inmate, Lewis Rogers, states that Plaintiff's left arm was extremely larger than his right arm and was obviously broken. There is no indication, however, that Rogers is a medical expert.

The Court can also take judicial notice of Plaintiff's medical records from SCDC filed in Civil Action Number 3:04-2421-RBH-JRM. See Aloe Creme Labs., Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970). In that action, it was noted on February 5, 2004, that x-rays of

9

Plaintiff's left hand revealed no acute abnormalities and that Nurse Practitioner Greco noted that there was no obvious reason for Plaintiff to seek an orthopaedic consultation at that time. On July 27, 2004, an orthopaedist at SCDC's orthopaedic clinic did not order surgery or an MRI, but merely recommended that Plaintiff use a wrist splint for one month.

Plaintiff claims that Defendant Major was deliberately indifferent to his serious medical needs because Major knew of Plaintiff's condition through grievances Plaintiff filed, but Major did nothing to help him. The copies of grievances submitted by Plaintiff all occurred before the alleged fracture of his ulna in July 2003. Further, review of these grievances indicates that Plaintiff was referred to medical personnel after each grievance, as is corroborated by the medical record.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendant Major's actions or inactions rose to the level of a constitutional violation.

3.   <u>Immunity</u>

Defendant Major also contends that he is entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendant Major violated any of his clearly established constitutional or statutory rights. Therefore, Defendant Major is entitled to qualified immunity in his individual capacity.

    4.    State Law Claims

Defendant Major contends that he is entitled to summary judgment as to Plaintiff's state law claims because: (1) they are barred by res judicata; (2) Major is entitled to employee immunity under the SCTCA; (3) his state law claims are barred by the two-year statute of limitations under the SCTCA; and (4) Major is entitled to sovereign immunity under the SCTCA for any acts

11

of simple negligence. As Plaintiff fails to show that Defendants violated his rights under federal law (as discussed above), only potential state law claims remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

     5.     <u>Defendants Joe and Eastern</u>

It is recommended that Defendants Joe and Eastern Healthcare be dismissed from this action <u>sua</u> <u>sponte</u> for Plaintiff's failure to serve these defendants. Federal Rule of Civil Procedure 4(m) provides in part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time.

Further, Local Rule 4.01, DSC provides:

> In the event a pleading asserting a claim is not served on each party against whom a claim is asserted within one hundred twenty (120) days after filing of the pleading, the party asserting a claim shall advise in writing the Court and all parties previously served at the expiration of said one hundred twenty-day (120) period of the identity of the party not served and why service has not been effected.

Plaintiff did not timely serve Defendants Joe and Eastern Healthcare and did not comply with the Local Rule above. He, however, was granted an extension of time until June 30, 2007 to serve these Defendants, but failed to do so. He filed an untimely motion, on July 16, 2007, to extend the time again, which was denied.

Alternatively, it is recommended that Defendant Joe be dismissed because claims against her are barred by the doctrine of res judicata (discussed above) as Plaintiff brought a prior action against Joe in which he asserted claims of medical deliberate indifference which was dismissed with prejudice for Plaintiff's failure to prosecute. Plaintiff's claims of deliberate indifference against Joe and Eastern Healthcare should also be dismissed because he fails to show that these Defendants were

deliberately indifferent to his claims concerning his arm/wrist. As discussed above, Plaintiff was examined on July 10, 2003, after he allegedly reinjured himself. He was prescribed Motrin for pain. Plaintiff was sent for physical therapy at Tuomey on July 15 and 17, 2003. A later orthopaedic consultation on August 22, 2003, failed to reveal that any new injury occurred in July 2003.

## CONCLUSION

Based on review of the record, it is recommended that Defendant Major's motion for summary judgment (Doc. 17) be granted. It is also recommended that Defendants Joe and Eastern Healthcare be dismissed sua sponte.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

August 7, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).